Please be seated. Before we begin this morning, for the record, I'd like to state that Justice Hoffman and Justice Hudson are unable to be with us this morning. They are full participants, fully functioning members of this court on all cases to be heard this morning. They will have the benefit of a recorded oral argument. They have had the benefit of all your written briefs. And they will also have the benefit of a shared record. So they will be fully informed as to both your arguments at orals and your written arguments and your briefs, and will be fully participating members of this court on each and every one of your cases this morning. Thank you. Please call the first case of the morning. 213-874 Ray and Pryor v. Castle Transport. Counsel, you may approach and begin your argument. May it please this honorable court, my name is Brad Reynolds. I'm here for Ray and Pryor. I just have a brief argument this morning. The finding of the commission was that Mr. Pryor was not in the course of his employment. We believe that the appropriate standard of review is a de novo standard. There are no facts that are in dispute. Cited in my brief, when the facts are agreed to, and it's a matter of applying the law to the facts, the de novo standard is the correct standard of review. I would also point to this court's decision in Milnarczyk v. Illinois Workers' Compensation Commission where they decided the issue of traveling employee on the basis of a de novo review. Now, did they find, did they address the issue of causation? They did, Your Honor. So your statement is they also found, what did they find as to causation? They found according to the arbitrator's decision, which was affirmed by the commission without opinion, that there was a lack of causal connection. What I would cite to with judicial notice, Your Honor, ask you to take judicial notice of the stipulation sheet, which is appendix 21. In page 1 of the appendix on the stipulation sheet, the respondent actually agreed that there was causal connection. There was a binding stipulation before the hearing began that causal connection was not an issue in dispute. The arbitrator found it to be an issue and found there was no causation. Correct. But I think you could take judicial notice of the binding stipulation and vacate the finding on causal connection as it was actually not an issue that was presented by the parties. It was an issue presented in evidence, wasn't it, before the arbitrator? I mean, was there a basis before the arbitrator as to will a record reveal that there was an evidentiary basis for that finding? I don't believe so. I don't believe there was an evidentiary basis. The matters were consolidated, and there were two decisions issued. I believe the arbitrator tried to shoehorn his findings to deny the first claim, which was not appealed, as a basis for finding of causation for the second injury, which was a completely different accident date, July 21, 2008. And again, the parties' stipulation sheet conceded causal connection. The matter was tried, and the issue that was before the court was whether Mr. Pryor was injured in the course of his employment. Which I believe remains the issue that is before you, and that any findings by the arbitrator or the commission concerning causal connection should be vacated because the parties stipulated that causation was not an issue at the time of the hearing. And again, I would cite to appendix page 21, where you can see that it's marked that that was not an issue in dispute. With regards to in the course of employment, the primary argument is one guided by law. The general rule is coming and going to work, you're not in the course of your employment, but there are recognized exceptions. And I want to be very specific. The only exception that we think that applies is the traveling employee exception. You are a traveling employee under Illinois law if your job duties take you away from your employer's premises. This gentleman was an over-the-road truck driver. He was always in his truck. Some nights he spent over-the-road and overnight in a hotel. And I believe Kastins concedes that he was a traveling employee. He was a traveling employee because his job duties driving the car hauler always took him away from the employer's premises. But the issue is, when did he become such? Correct. So let's cut to the chase here. According to Cox and Urban and the two other cases that I cited, Complete Vending and Milnarczyk, this court has determined that you are in the course of employment as a traveling employee from the moment that you leave your home, and that coverage continues until the moment you get back home. He has already left his house with a suitcase. Well, I mean, that kind of general language has been used in some cases, but those are cases where the person leaves home and he's starting his job. You know, for example, you have a plumber who has a company van. And he goes out and gets in that van and goes to his first work site. But your client had to drive to a yard to get his tractor-trailer to commence his work. That is correct. And what I would cite is specifically the Milnarczyk decision. The Illinois Workers' Compensation Commission found that she was not an employee, a traveling employee, because according to them, she had not begun her travel for work when she fell. They also said that she had not fallen on the employer's premises, and they also said that she had not fallen at a place where she was to do her cleaning. However, she fell going out to get into the van to go to the job to clean, similar to, like, a plumber who has a company van or that sort of thing. Well, I understand, but my point, Your Honor, would be that when he left his home, he doesn't become a traveling employee when he arrives at the yard. He was already a traveling employee when he left. Why wouldn't it start when he gets to the yard? Because Milnarczyk says that she didn't have toóshe hadn't even left her property, and she was determined to be a traveling employee. I don't thinkóand this is articulatedó In fact, I think weóin our decision in that case, I think we discussed it and found a reasonable inference that she was on a public way. Also, another factóand maybe this is not significant and you can tell usó was that that vehicle that she was going to was provided by her employer. And that's a good point. All these cases seem to involve a vehicle that was owned by the employer. And I did the best that I could in my brief to argue that I don't think that the exception that I'm arguing for, which is the traveling employee exception, I don't think ownership of the vehicle matters to a determination as to whether they're a traveling employee or whether they're in the course. I think the complete vending case said that there were several exceptions to the coming and going rule. And one of them was when the employer provides the means of transportation and the injured worker is injured during a time after the means of transportation has been provided and in the furtherance of the employer's business, that itself can be its own exception to the coming and going rule. But my argument is it doesn't matter that the personal vehicle where the suitcase was placed was not owned by the employer. I think he was a traveling employee by virtue of his job duties and that coverage began from the moment he left his house and it's not material to the traveling employee exception that he did not own the vehicle. I would concede that if you find, as a group, that there is some significance to the ownership of that vehicle, then you would have a basis for saying that he's not in the course of his employment. But in these cases that I've cited, I don't think that the court had to find that the vehicle was owned by the injured worker in order to determine that he or she was a traveling employee. And so I think it's certainly a distinction. No one has alleged that the vehicle involved here was owned by the employer. It was his personal vehicle and he had left his home and it's our position that, as a traveling employee, he was covered door to door and that ownership of the vehicle is not material to the issue of whether he was a traveling employee. If he's a traveling employee, then the test is reasonableness of the conduct and foreseeability to the employer, which I argued in my brief. It would certainly be reasonable for someone who's going to stay overnight to pack a suitcase and put it in his vehicle. And I think it's further foreseeable to the employer who provided him with a list of hotels to pick from that they could foresee that he would load a suitcase into his vehicle before driving to the yard and getting his truck. So it's our position that if he is a traveling employee, coverage is door to door. Cox and Urban say that. I think Milnarczyk says that because she hadn't even gotten into the vehicle to begin her travel when she fell. And the IWC said she hadn't gotten into her vehicle and that's why we don't think she was in the course of employment. But this Honorable Court said that's not right. That's the test. The test is whether she was a traveling employee. Did her duties take her away from her employer's premises? And it didn't matter that she hadn't begun travel for work. It didn't matter that she didn't fall at the employer's premises. It didn't matter that she didn't fall at the place where she was going to do the work. And I think those distinctions apply here. It shouldn't matter that he hadn't gotten to the yard. It shouldn't matter that he hadn't gotten into his semi. It shouldn't matter that he wasn't on the road when the accident occurred. If he's a traveling employee, what should matter is that it was door to door and he had left his house, and I think he's covered. And I don't think ownership of the vehicle is a factor in the traveling employee exception. I'm not advocating that other exceptions to the coming and going rule may apply because if they do, that's not my facts. Okay. Thank you, Counsel. Thank you. Excuse me. And I'm sorry to interrupt, but I do think the Counsel has time. I want to just go back to the causation part of this just briefly. And I understand that you haven't argued the causation aspect of the Commission's decision, and opposing counsel hasn't either. This is, as it's briefed, a traveling employee issue. But you say that the parties stipulated, and it seems to be an assumption that that part of the Commission's decision should be off the table. Is there any case law or statutory law that supports the proposition that in a request for hearing where the parties are narrowing the issues for the arbitrator, that that constitutes a binding stipulation as between the parties? That's the first one. Secondly, as to whether or not that binds the arbitrator and the Commission and precludes them from considering issues that the parties deem may be settled or off the table. Because when you just simply look at the request for hearing, it doesn't take on the flavor of a stipulation, which you're referring to here, that would preclude the Commission from doing what it did here. Can you address that? Sure. Yes, Your Honor. I wish I could give you the name of the case, but I'm certain or I'm confident that there is a telecourt case law that says that a stipulation signed by the parties is binding on the arbitrator and the Commission. The request for hearing form is a stipulation form, and the parties are to identify, issue by issue, what issues are and are not in dispute. I'm going to call it a stip sheet, right? Yes. And if we look at appendix page 21, I looked at it yesterday, if we look at 21, they mark that causal connection was not an issue that was in dispute. The respondent agreed that his condition of ill-being was causally related to what happened to him on July 21, 2008. And so there should not have been findings made by the arbitrator or the Commission. It was the understanding of the parties that this whole issue was accident arising out of and more particularly in the course of. No request for a corrected decision, I mean, because the arbitrator very clearly found no causation. Correct. And I think the best way I can explain it is to go back to what I had said before, was that these cases were consolidated and there were two hearings on the same day at the same time, and the arbitrator issued two distinct rulings. Only an appeal was taken of the ruling from July 21, 2008, and I think the arbitrator tried to shoehorn his rationale for denying the case that was not appealed, which involved a low back as an explanation for his finding in the 2008 July 21 accident. But again, the stipulation sheet of the parties is binding, and Respondent agreed that causal connection was not an issue. Okay, we know that. You've said that a couple times here. Yes, sir. The question is, do you prepare proposed findings for the arbitrator? Yes, both sides prepare proposed findings. And in this particular case, the arbitrator. I'll ask opposing counsel, were you rather surprised then to find a no causation finding on this particular case? Yes, in light of the stipulation sheet. But again, there were two cases heard that day, and I think the arbitrator tried to shoehorn his rationale for both claims. But I think the stipulation sheet binds the parties. And to my knowledge, the issue that was presented to the arbitrator that day, which is the issue before you, is whether Mr. Pryor was in the course of his employment when he placed the suitcase in his personal vehicle. I appreciate your time this morning. Thank you, Your Honors. Thank you. Counsel, you may respond. Are you prepared to concede that you stipulated the causation and its binding? No, Your Honor. I just showed Mr. Reynolds the stipulation sheet, and it's obviously a mistake. On the front of the sheet, page 21, it does say that it's agreed, but on the back, accident, it looks like accidents, in dispute, and medical bills. It's written out on the stipulation sheet that causal connection is in dispute. And, by the way, Sam Chernilya. Oh, I see. Under 13, it says other issues, medical bills, TTD, causal connection, accident. Yes, it's in dispute. Okay. So it's not clear from the stipulation sheet? Correct. Okay. And Sam Chernilya for the responding to Cassin's transport. The traveling employee concept has expanded greatly over the years, but there has to be some limits. In this case, I believe my strongest argument is to ask you if you could estimate how many truck drivers are in the state of Illinois that drive for Pepsi, 7-Up, UPS, FedEx. Almost all of these drivers drive their personal vehicles to the terminal, whatever. They pick up their vehicle, and they deliver their product. But opposing counsel is saying, yes, that's true. Yes. He's not going there. He's saying that there's an overnight with Cassin's. Yes. With fair regularity. Absolutely. Admitted by Cassin's. Absolutely. He's a traveling employee. We agree. He's a traveling employee. I cannot see the difference between a factory worker driving to the factory, and he's not covered to and from work, and the difference between this truck driver or all of those thousands of truck drivers driving their personal vehicles to their place of employment to pick up their, they're traveling employees when they're in their vehicle, when they're at the terminal. When they're in the tractor. Yes. If, I mean, you would have. He's saying that this, out of that, there's a subset out of that set. Yes. That of those who, with regularity, and it's known both to the employer and to the employee, that they will be overnight. And that, therefore, their duties when they get up is to prepare for that overnight trip, and so they're in furtherance of their employer's venture at that point. That seems to be what that. Well, if you're going to go that far, then when he packs his bag and he's in his house and he walks down the step and he trips down the steps with the bag in his hand in his home, is he a traveling employee? Well, that was where Olnarsik and others seemed to say, once you leave the porthole of your home, that seems to be at the point we're at now in the case law, doesn't it? Well, all of those cases, every one of those cases involved, I made a couple notes on a number of the cases here. Complete vending, Cox, Olnarsik, they're all vehicles that are there 24 hours. They drive them to and from work. That's completely different. If this gentleman took his 18-wheeler home with him, we'd have a different story. So in that case, you would say if he did fall down the stairs with his suitcase, then he's covered in his house. That's a real close call. On his way out to the tractor-trailer. And he hasn't opened the door. Yes, that's, I mean, you're going to extremes. I mean, in the traveling employee cases have gone to extremes. Well, is there any case that said that, even though you may say they have gone to extremes? Is there any case that said as he falls down the stairs carrying his satchel? No, nothing's gone that far. Nothing's gone that far. Everything has been outside of the. . . Yes, yes. And even if you look at Venture Newberg, I don't think if the appellate court decision was correct or the Supreme Court decision was correct, neither one of those helps the petitioner in this case. We've been talking about the distinctions, the factual distinctions between this case and Milonarczyk. What do you think the Venture Newberg case does to this Court's reasoning within Milonarczyk? I mean, are you, just tell us how you think Venture Newberg prescribes an application of Milonarczyk from this point forward. I don't think if even Venture Newberg affects Milonarczyk. I think it's completely different, really. I mean, that was a traveling employee in Milonarczyk that has, that takes the vehicle, they're janitors, they go to job sites, they go to and from work, they have a company car. Venture Newberg, there's no company car. I myself have, I could accept either Venture Newberg decision, the appellate court or the Supreme Court. They're both well-reasoned decisions. Do you think post-Venture Newberg, Milonarczyk hasn't been weakened? Not really, no. I thought Venture Newberg was really fact-specific and didn't give us much loss. I mean, it really boils down in this case to the issue of he has to get in his car and drive someplace before he starts work. Absolutely, yes. So your opposing counsel would say he was starting work when he carried his suitcase out. Absolutely. That could be a rising out of the carrying the suitcase that has something to do with his job. So is that a fact issue and are we under manifest weight or are you de novo? I was thinking that this could actually be a fact case rather than a legal issue, absolutely. It could go either way, but I don't see how either way it could go for the petitioner. So if the facts changed and he drives to the terminal, his employer's terminal, and gets out of his car and goes behind the gate, I assume, where the tractors are, and he's climbing into the tractor and he's taking his case with him and putting it back in the slipper cab, then in that case you would say he's a traveling employee and that's rising out of it. We've had many cases like that that were all compensable. Absolutely. Thank you. Well, okay, thank you, counsel. In reply, counsel? Just two points on rebuttal, and again, thank you for your time this morning. Appendix page 22, which was referenced by my colleague, Mr. Cianiglia, on number 13, that does say other issues, quote, not listed above. And so you're not supposed to list items in 13 if they're already addressed specifically. And so I go back to A21, number 4, and it's marked petitioner and respondent agree that causal connection is not an issue. So I don't think you can, I think, I guess what I'm trying to say is the more specific. It's at least ambiguous, isn't it? Yes. To somebody just objectively reading it. Sure. But I would say the more specific should override the general. And in paragraph 13, it's supposed to address issues that are not listed in the stipulation before paragraph 13. How is one to read number 13? What does that mean, other issues? And then it says causal connection. I mean, how are we to read that, you know, other than to conclude that causal connection is a disputed issue? Well, as I said, I think the intent of the stipulation is to list issues that have not previously been addressed. Causal connection is listed there, but specifically in paragraph 4, they agree that causal connection is not a dispute. But it's not clear. I mean, I would say, yes, there's probably a point to be made that it's an ambiguous. But I would say that the more specific should override the general, and the specific stipulation regarding causal connection is marked that the respondent agrees. And then my only other point was, just to address Venture and Newberg, two things. That was just a case about whether the petitioner claimed it was a traveling employee. And, of course, the Supreme Court found that he was not. My reply brief says, I don't think Venture applies to our appeal because Gasson's already concedes he's a traveling employee. And so I don't think that the decision in Venture waters down or changes the outcome or gives any additional guidance to this Court. I think Milnergic stands for its holding, and I don't think it's affected by Venture. I think Venture defines when someone can be considered a traveling employee, but that's not a dispute that's before this Court with regards to Mr. Pryor. It is. When do they become a traveling employee? At what point in time and place do they become a traveling employee? Venture and Newberg did. Maybe we could refer to it as dicta, but it did seem under the facts of that case they said when that employee would become a traveling employee. But didn't they look at all sorts of circumstances, none of which pertain to whether he owned the vehicle? I mean, they did talk about it. That is correct. That is correct. But they did somewhat argue that there is a defining point. Well, that might be. But what I remember about Venture, for instance, is they thought it was significant to the Supreme Court that he wasn't a permanent employee of Gathens and that he was temporary. Mr. Pryor's worked seven years for this employer. I just think if we looked at the factors that were identified in Venture, all of those would tell us that he's a traveling employee, but the respondent has already agreed to that. So I just think that to Justice Harris's point, I just don't think Venture and Newberg changes the Milnarchik analysis. I think the analysis is the same. Thank you for your time. Thank you, counsel, both for your arguments in this matter. This morning it will be taken under advisement and written disposition shall issue.